IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **REAGAN MCNERNEY**, <br><br> *Plaintiff*, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> *Defendant*. | Cause No. 3:22-CV-684-CWR-LGI |

**MEMORANDUM OPINION AND ORDER**

This Federal Tort Claims Act (FTCA) case proceeded to trial in spring 2024. In accordance with Federal Rule of Civil Procedure 52(a)(1) and its interpretive case law, *see Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998), this Memorandum Opinion and Order presents the Court's findings of fact and conclusions of law.[1]

**I.     Findings of Fact**

    **A.     Undisputed Facts**

On September 20, 2020, Dr. Reagan McNerney, a dentist, was driving her vehicle North on Highway 49 in Hattiesburg, Mississippi. At the same time, United States Postal Service employee Christopher Monk was delivering packages on the right shoulder of Highway 49. He too was facing North.

At that spot, Highway 49 was a four-lane divided highway. Two lanes went North; two went South.

---

[1] Any finding of fact that should be regarded as a conclusion of law shall be deemed as such, and vice versa.

As Monk re-entered Highway 49, moving from the shoulder into the lanes of traffic, his mail truck collided with Dr. McNerney's vehicle. He was ejected but spared serious harm. Her vehicle rolled several times before it stopped. Both vehicles were totaled.

Dr. McNerney sustained injuries to her left shoulder and right hip. She later commenced this FTCA suit to seek damages from Monk's employer—the United States government.

The parties agree that everyone had a duty to drive with reasonable care. They disagree about everything else. As a result, this Court held a bench trial on April 11, April 12, and May 1, 2024, to hear testimony and consider the documentary evidence.

**B.    Resolution of Disputed Facts**

The Court concludes that Dr. McNerney proved her case. It is more likely than not that Monk breached his duty of care when he re-entered Highway 49 and drove in front of Dr. McNerney. His negligence caused her injuries and made the United States liable for remedying those injuries. The full explanation follows.

Both drivers deny responsibility for the crash. Dr. McNerney says she was traveling normally in the left lane when Monk entered her lane. Monk says he was moving from the right shoulder into the right lane when Dr. McNerney veered right and struck him. It is a classic "he said, she said" dispute, and both sides' attorneys spent cross-examination trying to cast doubt upon their opponent's recollection.

In trying to resolve this dispute, the Court has given substantial weight to the testimony of eyewitness Dustin Davis, the disinterested person who had no dog in the fight.

Davis was driving North on Highway 49 that day. He was in the right lane, and he saw what turned out to be Dr. McNerney's vehicle in the left lane. After driving in tandem

like that, Davis saw a USPS mail truck enter the highway from the right shoulder, cross his lane, and enter the left lane. If the mail truck thought it had enough room to get in front of Dr. McNerney's vehicle safely, it had misjudged the situation. Dr. McNerney's vehicle was already approaching and "T-boned" the mail truck. Davis and his friend pulled over, pulled Dr. McNerney out through her windshield, and called 911.

There were three additional passengers in Davis's vehicle. None of them testified. Monk's testimony indicated that there was yet another witness to the crash. Neither party had that witness testify. At the end of the day, then, the only disinterested eyewitness to give evidence in this case was Davis. His testimony is credible and accepted by the Court, and its weight tilted the scales in meeting Dr. McNerney's burden of proof—the preponderance of the evidence—as to liability.

The wreck caused personal and professional harm to Dr. McNerney. She was fine before the accident, but now has severe hip pain. She went through round after round of physical therapy, which required time off from work, and tried other treatments like steroid injections. Yet she needs hip surgery to have the best chance of a full recovery. She may also need shoulder surgery.

These injuries have tangible manifestations. Dr. McNerney's left arm shakes. She has difficulty taking the trash out and relies upon her mother to mow the yard and lift dog food. Numbness in her fingers has affected her ability to deliver injections to patients in her dental practice. She can't complete as many dental procedures in a day as before, and when she has her hip surgery, during her recovery period she will have to alter the way in which she performs her dental procedures (standing versus sitting).

Dr. McNerney presented ample evidence of "objectively verifiable monetary losses." Miss. Code Ann. § 11-1-60(1)(b). She incurred $27,677.45 in medical bills and lost approximately $12,000 in wages to seek medical treatment for her injuries. Evidence from her and treating physician Dr. J. Hunter Berry established that the wreck caused her to need hip surgery and associated physical therapy. The testimony of the Government's expert did not hinder Dr. McNerney from meeting her burden—a preponderance of the evidence—on these points. Testimony from rehabilitation counselor Ty Pennington and economist Dr. Bill Brister, meanwhile, established that the surgery and therapy will cost Dr. McNerney $37,924.86 and cause post-tax lost earnings of $21,600 during her recuperation period. The Court credits their testimony. Adding these various economic damages results in a total of $99,202.31.

The parties disputed whether Dr. McNerney can also recover $23,926.10 to pay for an anticipated shoulder surgery. Such a surgery would result in another $21,600 in lost earnings for the ensuing recuperation period. The Court finds that Dr. McNerney may not recover for this anticipated procedure because her counsel did not supplement discovery with documents relevant to this surgery. *See* Docket No. 90 at 15.

Dr. McNerney has also sustained "subjective, nonpecuniary damages." Miss. Code Ann. § 11-1-60(1)(a). The difficulties of measuring these damages are well-known, and some of the cases explaining why are cited below. Here, though, non-economic damages encompass Dr. McNerney's pain and suffering, mental anguish, physical impairment, embarrassment, and loss of the enjoyment of life. As just one example beyond those already mentioned, Dr. McNerney used to run 5Ks for pleasure. She can't do that anymore, and in

fact has trouble walking more than 20 minutes. Weekends are for resting and recuperating, rather than socializing. These injuries merit compensation.

Given these injuries and after considering comparable cases, *see infra*, an appropriate award for nonpecuniary damages is $297,606.93.

The result is a total compensatory damages award of $396,809.24.

**II.    Conclusions of Law**

Dr. McNerney brought suit pursuant to the FTCA. *See* 28 U.S.C. § 2671 *et seq*. All pre-suit administrative requirements were satisfied. The Court has personal jurisdiction over the parties and subject-matter jurisdiction over this action. *See id.* § 1346(b)(1).

At all relevant times, Monk was acting in the course and scope of his employment with the U.S. Postal Service. That makes the United States government responsible for his acts of negligence in this case.

"[T]he FTCA requires the Government's liability to be measured in accordance with the law of the state where the alleged act or omission occurred." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012) (citations omitted). Accordingly, Mississippi substantive law governs Dr. McNerney's claim.

In Mississippi, a negligence claim requires the plaintiff to prove "1) duty, 2) breach, 3) cause (both in fact and proximate), and 4) damages." *Smith v. Minier*, 380 So. 3d 889, 893 (Miss. 2024) (citation omitted). "[A] claim for negligence simply requires that the defendant failed to act as a reasonable person would under the same or similar circumstances, thereby breaching the applicable standard of care." *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017) (citation omitted).

"[D]rivers utilizing the roads in this state owe a duty to keep a proper lookout and be on alert for vehicles, objects[,] and persons ahead in the highway, see what he should have seen, have his vehicle under proper control, be on the alert on the highway, and avoid striking plain objects." *Smith*, 380 So. 3d at 893 (cleaned up). Mississippi law specifically provides that when entering a highway, drivers "shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard." Miss. Code Ann. § 63-3-805.

To reiterate, the Court concludes that Monk's driving fell beneath the standard of care expected of a reasonable driver. His negligence was the cause of Dr. McNerney's damages.

Mississippi law defines economic damages as:

> objectively verifiable pecuniary damages arising from medical expenses and medical care, rehabilitation services, custodial care, disabilities, loss of earnings and earning capacity, loss of income, burial costs, loss of use of property, costs of repair or replacement of property, costs of obtaining substitute domestic services, loss of employment, loss of business or employment opportunities, and other objectively verifiable monetary losses.

*Id.* § 11-1-60(1)(b). "When loss is realized, but the extent of the injury and the amount of damage are not capable of exact and accurate proof, damages may be awarded if the evidence lays a foundation which will enable the trier of fact to make a fair and reasonable estimate of the amount of damage." *Warren v. Derivaux*, 996 So. 2d 729, 737 (Miss. 2008) (cleaned up).

Dr. McNerney put forward evidence of $99,202.31 in economic damages arising from past medical expenses, lost wages, anticipated future medical expenses, and anticipated future lost wages. This sum is due to be awarded.

Mississippi law defines non-economic damages as:

> subjective, nonpecuniary damages arising from death, pain, suffering, inconvenience, mental anguish, worry, emotional distress, loss of society and

> companionship, loss of consortium, bystander injury, physical impairment, disfigurement, injury to reputation, humiliation, embarrassment, loss of the enjoyment of life, hedonic damages, other nonpecuniary damages, and any other theory of damages such as fear of loss, illness or injury.

Miss. Code Ann. § 11-1-60(1)(a).

Non-economic damages are more difficult to calculate than their objectively-measured brethren, *see Darby v. United States*, 878 F. Supp. 2d 692, 699 (N.D. Miss. 2012), and vary according to evidence, *Hardy v. United States*, No. 3:09-CV-328-CWR-LRA, 2013 WL 1209647, at *7 (S.D. Miss. Mar. 25, 2013) (collecting FTCA cases from this district and negligence judgments affirmed by Mississippi courts). "Mississippi courts have approved various multipliers of the medical expenses or other economic damages to the non-economic damages, to guide their view of the appropriateness of non-economic damages awards." *Id.*

Here, the testimony of Dr. McNerney and her mother support a non-economic damages award of $297,606.93 arising from pain and suffering, mental anguish, physical impairment, embarrassment, and loss of the enjoyment of life. That is well-within the range and multiplier other similar cases have found to be appropriate, after accounting for inflation. *See, e.g.*, *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 929 (Miss. 2006) (affirming $591,597.06 award for pain and suffering in Mississippi Tort Claims Act (MTCA) case resulting in leg injury); *Natchez-Adams Sch. Dist. v. Bruce*, 168 So. 3d 1181, 1183 (Miss. Ct. App. 2015) (affirming $345,000 non-economic damages award in MTCA premises liability case); *Papale v. United States*, No. 1:09-CV-611-HSO-JMR, 2011 WL 831180, at *6 (S.D. Miss. Mar. 3, 2011) (awarding $157,641.38 in non-economic damages in FTCA premises liability matter).[2]

---

[2] According to the Bureau of Labor Statistics' CPI Inflation Calculator, in 2025 dollars, the award in *Hall* represents $951,931.28, the *Bruce* award represents $471,031.21, and *Papale* award represents $225,091.52.

The total compensatory damages award is, therefore, $396,809.24.

### III.   Conclusion

For these reasons, the Court finds in favor of Dr. McNerney in the amount of $396,809.24. Attorney's fees may be collected in accordance with 28 U.S.C. § 2678. Costs may be awarded on timely application to the Clerk of Court. A separate Final Judgment will issue shortly. Post-judgment interest will not accrue unless and until Dr. McNerney files the judgment "with the Secretary of the Treasury." *Dickerson v. United States*, 280 F.3d 470, 478 (5th Cir. 2002).

**SO ORDERED**, this the 30th day of March, 2025.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE